IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___ D.C.

05 APR 29 AM 10: 16

ROBERT R. DI TROLIO
CLE___, U.S. DIST. CT.
W___ F TN, MEMPHIS

GREG NEWSOME, et al.,

    Plaintiffs,

v.    No. 02-2203 B

NORTHWEST AIRLINES CORP., et al.,

    Defendants.

---

ORDER DENYING PLAINTIFFS MOTION TO ALTER OR AMEND JUDGMENT
AS TO DEFENDANT INTERNATIONAL ASSOCIATION OF MACHINISTS
& AEROSPACE WORKERS

---

Before the Court is the motion of the Plaintiffs, Greg Newsome, Christian White, Daren Bow, James Hagbloom, Jeffrey George Unger, Jerome Donald Unger, Jeseph Vella, Matthew Peak, Raymond Downie, Scott Donahoe, Timothy Schmittou, Thomas Joseph Hales, Amy Boutwell, Michael Beri, Rasashan Salyasahn, John Brake, Steven Nowitzke, Ronald John Covacs and Robert W. Clarin, to alter or amend the judgment with respect to Defendant International Association of Machinists and Aerospace Workers ("IAM"), pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

Rule 59 permits the filing of motions to alter or amend a judgment within ten days after entry of judgment.

> The purpose of a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) is to have the court reconsider matters properly encompassed in a decision on the merits. This rule gives the district court the power to rectify its own mistakes . . . Generally, three situations justify a district court altering or amending its judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice. It is not designed to give an unhappy litigant an opportunity to

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 4-29-05

162

relitigate matters already decided, nor is it a substitute for appeal. Sherwood v. Royal Ins. Co. of Am., 290 F.Supp.2d 856, 858 (N.D. Ohio 2003) (internal citations and quotation marks omitted). Rule 59(e) motions are designed for *reconsideration*, not *initial* consideration. Johnson v. Henderson, 229 F.Supp.2d 793, 796 (N.D. Ohio 2002). Evidence is "unavailable" when it could not, in the exercise of reasonable diligence, have been submitted prior to the original ruling. Franklin v. Francis, 36 F.Supp.2d 1008, 1010 (S.D. Ohio 1999), aff'd, 168 F.3d 261 (6th Cir.), cert. denied, 525 U.S. 1132, 119 S.Ct. 1022, 142 L.Ed.2d 973 (1999).

This lawsuit involves the layoff of a substantial number of Northwest Airlines, Inc. ("Northwest") employees following the terrorist attacks of September 11, 2001. The Plaintiffs have alleged that the layoffs violated their collective bargaining agreements. Defendant IAM is an unincorporated labor organization and the certified representative of employees of Defendant Northwest in the Clerical, Office, Fleet and Passenger Service craft or class. Prior to 1999, IAM was also the certified representative of Northwest's Mechanics and Related craft or class employees. The Plaintiffs, which include 64 Northwest workers, contend in this action that IAM breached its duty of fair representation in failing to file grievances against Northwest for improper outsourcing, hiring and use of overtime. They have also averred that IAM refused to address the wrongful use by Northwest of the *force majeure* clause contained in the collective bargaining agreements affecting the Plaintiffs.

In an order entered October 8, 2002, District Judge Bernice B. Donald granted the motion to dismiss filed by IAM for lack of subject matter jurisdiction. It is this order for which the Plaintiffs seek reconsideration herein. Specifically, Judge Donald concluded that the Plaintiffs failed to allege sufficient facts to establish that their reliance on IAM to process a grievance on their behalf was

2

reasonable under the circumstances, which must be shown in order to demonstrate breach of a duty of fair representation. She noted that "IAM communicated on September 24, 2001; September 27, 2001; and October 25, 2001, through written postings on IAM bulletin boards throughout Northwest. These postings advised members to contact their local grievance committee if they felt that the [collective bargaining agreement] had been violated pertaining to the layoff or seniority procedures. The October 25, 2001, posting specifically states with respect to the alleged *force majeure* issue, 'The members must initiate the grievance.'" (Order Denying AMFA's and Northwest's Mots. to Dismiss; and Granting Northwest Airlines Corp.'s and IAM's Mots. to Dismiss; and Staying the Proceedings at 11-12.) In addition, the Court found that

> Plaintiffs should have known to initiate grievances when IAM representatives failed to respond to inquiries coupled with IAM's numerous published notices. It is not reasonable under these circumstances to assume that IAM would initiate the grievances. Furthermore, the exhibits filed by IAM indicate that the class action grievances that were filed by its members are now being pressed to arbitration by IAM. Accordingly, no indication exists that IAM has acted in an arbitrary, discriminatory, or bad faith manner as to the grievances related to the force majeure clause, Northwest's outsourcing, Airlink's hiring, and Northwest's use of overtime.

(Order Denying AMFA's and Northwest's Mots. to Dismiss; and Granting Northwest Airlines Corp.'s and IAM's Mots. to Dismiss; and Staying the Proceedings at 13.) Accordingly, the Court held that, as they did not establish exhaustion of their contractual remedies prior to filing this action, the Plaintiffs could not demonstrate subject matter jurisdiction. Judge Donald further concluded that dismissal was appropriate as to the Plaintiffs' claims that IAM had breached its duty of fair representation by failing to recognize the seniority rights of employees represented by it. The Court stated that, upon the certification of Defendant Aircraft Mechanics Fraternal Association ("AMFA") as the exclusive bargaining representative of the Mechanics and Related craft or class in June 1999,

3

IAM ceased to be the bargaining representative of the Plaintiffs and, thus, could not have been held to breach any duty to the Plaintiffs or have been required to grieve the seniority issue.

The Plaintiffs submit in the instant motion that, subsequent to the issuance of the Court's October 8 order, several union representatives came forward to assert, through affidavits filed contemporaneously with the motion, that the representations made by IAM with respect to the need to file individual grievances were false. This "new evidence," the Plaintiffs insist, warrants amendment of the judgment as to IAM. Furthermore, they posit that the Court's failure to amend its judgment (and thereby reinstate the Plaintiffs' claims against IAM) based upon the new evidence would work a manifest injustice.

In support of their argument, the Plaintiffs have presented the affidavits of Janette Sielback, Leanne Bachmeier, Paula Viehman and Theresa Funk. In her affidavit, Sielbeck, a customer service agent for Northwest and an IAM shop steward, stated that employees who were laid off were required to turn in their security badges, the loss of which prohibited them from entering secure areas of the airports. See Aff. of Janette Sielbeck at ¶¶ 12-13. "IAM posted notices to laid off employees only upon IAM bulletin boards in secure areas of the airports within which IAM-represented Northwest employees worked." (Aff. of Janette Sielbeck at ¶ 14.) Sielbeck articulated that "IAM laid off employees did not have security clearance to access the bulletin boards on which the IAM posted a notice encouraging laid off employees to file individual grievances related to the force majeure article of the IAM/NWA" collective bargaining agreement. (Aff. of Janette Sielbeck at ¶ 15.) She further averred that, after the layoffs, she was approached by numerous employees asking if IAM employees needed to file individual grievances. Sielbeck informed them they did not, based upon representations of Larry Walters, an IAM shop committee representative, and Scott Peterson,

4

IAM's District Chair for Lodge 143, who instructed her that a *force majeure* grievance had been filed by the union and that employees could not file individually. (Aff. of Janette Sielbeck at ¶¶ 16-20.)

Bachmeier, an employee in Northwest's central load control division and an IAM shop committee member, related in her affidavit that Peterson told her after the layoffs that a "grievance had been filed on behalf of all laid off IAM employees and that the shop committee should not accept individual grievances." He indicated further that "the filing of individual grievances would be a waste of time and unnecessarily duplicate the paperwork of the et al. grievance" and copied her on letters of appeal relative to the grievance. (Aff. of Leanne Bachmeier at ¶ 20, 23.) Based on these representations, Bachmeier informed IAM employees not to file individual grievances on the force majeure clause. (Aff. of Leanne Bachmeier at ¶ 24.) Bachmeier maintained that, as laid off employees did not have access to bulletin boards in secure airport areas, they "relied exclusively upon counseling by IAM shop stewards and committee members." (Aff. of Leanne Bachmeier at ¶¶ 14-16.) Shop steward Fred Gephardt accepted individual grievances from laid off employees and later discarded or lost them based on Peterson's assurances. (Aff. of Leanne Bachmeier at ¶ 27.)

Viehman, who stated in her affidavit that she was a grievance committee union representative for Local Union 1833 in Minneapolis, Minnesota from January 1, 2001 to April 8, 2002, averred therein that

> I attended a meeting during the third week of October 2001 whereby all committee members in Minneapolis were called to the District 143 offices in Eagan, Minnesota. The meeting was called by the District to help coordinate all grievance offices' attempts to deal with the upheaval in our work environments as a result of the massive layoffs after September 11, 2001. Among others present at the meeting were President Robert DePace, Vice President Steve Dunn, and General Chairs Gerry Bernsen and Sandy Weber. Theresa Funke and I attended on behalf of our grievance office.

5

> At the foregoing meeting, Steve Dunn stated that IAM was filing an *et al.* grievance regarding Northwest's improper use of the *force majeure* clause in our [collective bargaining agreement] to wrongfully layoff thousands of IAM employees.
>
> Although I was not laid off, I filed a *force majeure* grievance in the name of Paula Viehman, *et al.* on behalf of all laid off IAM employees system-wide on October 17, 2001. It is customary for a grievance committee member to file an *et al.* grievance on behalf of all affected IAM employees. . . .
>
> After the grievance was filed, the national organization took over responsibility for pursuing it on behalf of all affected employees. Unfortunately, I have since learned that IAM did not timely file the required Step 2 grievance in a timely manner.
>
> Believing that the national organization was following the grievance procedure and pursuing the *force majeure et al.* grievance, I personally represented to IAM employees that no individual grievances should be filed.
>
> Based upon direct representations made to me by IAM officials at the District meeting referred to above, I informed IAM employees not to file individual grievances on the *force majeure* issue.

(Notice of Intent to File Affs. of Paula Viehman and Theresa Funke, Ex. A (Aff. of Paula Viehman at ¶¶ 3, 5, 15-20.) Funke, also an IAM grievance committee union representative in Minneapolis, signed an affidavit very similar to Viehman's, stating further that she signed the grievance filed by Viehman as union representative. (Notice of Intent to File Affs. of Paula Viehman and Theresa Funke, Ex. A (Aff. of Theresa Funke at ¶ 16.)

In their affidavits offered in support of the response to the original motions to dismiss, Northwest IAM-represented employees--also Plaintiffs in this action--related that they were told by union representatives that IAM would be filing a grievance on behalf of all employees and that they relied on those representations, without any mention whatever of not being aware of the IAM postings or of being instructed not to file individual grievances. There is nothing to suggest, however, that the evidence presented by the Plaintiffs in the instant motion, which is cumulative at

6

best, was truly not available prior to the Court's original ruling. See Castaldo v. Stone, 191 F.Supp.2d 1196, 1197 (D. Colo. 2002) (Rule 59(e) motion not supported by cumulative evidence). Moreover, the proffered affidavits do not offer any additional evidence with respect specifically to the Plaintiffs. In short, the Court does not find that the evidence is "new" or that a denial of the motion to alter or amend would result in a manifest injustice to these Plaintiffs. Thus, the motion is DENIED.

IT IS SO ORDERED this 28th day of April, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 162 in case 2:02-CV-02203 was distributed by fax, mail, or direct printing on April 29, 2005 to the parties listed.

---

Kenneth M. Willner
PAUL HASTINGS JANOFSKY & WAKLER LLP-Washington
875 15th St., N.W.
Washington, DC 20005

Margaret H. Spurlin
PAUL HASTINGS JANOFSKY & WAKLER LLP-Washington
875 15th St., N.W.
Washington, DC 20005

Stanley J. Silverstone
SEHAM SHEHAM MELTZ PETERSEN, LLP
445 Hamilton Ave.
Ste. 1204
White Plains, NY 10601

Lee Seham
SEHAM SHEHAM MELTZ PERERSEN, LLP
445 Hamilton Ave.
Ste. 1204
White Plains, NY 10601

Stephanie Camille Reifers
BATEMAN GIBSON & CHILDERS
65 Union Ave.
1010 Cotton Exchange Bldg.
Memphis, TN 38103

Karen L Dingle
SEHAM SHEHAM MELTZ PERERSEN, LLP
11 Martine Ave.
Ste. 1405
White Plains, NY 10606

Mark A. Allen
PROVOST & UMPHREY, LLP
200 Jefferson Ave.
Ste. 250
Memphis, TN 38103

Carmen R. Parcelli
GUERRIERI EDMOND & CLAYMAN
1625 Massachusetts Ave., N.W.
Ste. 700
Washington, DC 20036--224

Charles McGhee
BLANTON & McGHEE
5384 Poplar Ave.
Ste. 400
Memphis, TN 38119

Ralph T. Gibson
BATEMAN GIBSON & CHILDERS
65 Union Ave.
1010 Cotton Exchange Bldg.
Memphis, TN 38103

Jeffrey A. Bartos
GUERRIERI EDMOND & CLAYMAN
1625 Massachusetts Ave., N.W.
Ste. 700
Washington, DC 20036--224

Joseph Guerrieri
GUERRIERI EDMOND & CLAYMAN
1625 Massachusetts Ave., N.W.
Ste. 700
Washington, DC 20036--224

Nicholas P. Granath
SEHAM, SEHAM, MELTZ & PETERSEN, LLP
2950 Metro Drive
Ste 301
Bloomington, MN 55425

John J Gallagher
PAUL HASTINGS JANOFSKY & WAKLER LLP
875 15th St. N.W.
Washington, DC 20005

Stephen D. Goodwin
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Honorable J. Breen
US DISTRICT COURT